**07-3769-cv**
**Escaler v. U.S. Citizenship**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: March 9, 2009      Decided: September 11, 2009)

Docket No. 07-3769-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAIME BORROMEO ESCALER,

Plaintiff-Appellant,

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; EDWARD MCELROY, District Director; ERIC H. HOLDER JR., United States Attorney General;* DEPARTMENT OF HOMELAND SECURITY,

Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:    WINTER and SACK, Circuit Judges, and COGAN, District Judge.**

Appeal from an order by the United States District Court for the Southern District of New York (Barbara S. Jones, Judge) granting the United States Citizenship and Immigration Services'

---

*Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr. is automatically substituted for former Attorney General John Ashcroft.

**The Hon. Brian M. Cogan, of the United States District Court for the Eastern District of New York, sitting by designation.

("CIS") motion to dismiss.  After his application for citizenship was approved, appellant failed to take the oath of allegiance in the familiar public ceremony, and left the United States for more than a year.  The CIS found that this absence violated the requirement of continuous residence between the initiation of a naturalization application and the completion of naturalization.  Appellant now seeks an order compelling CIS either to issue him a Certificate of Naturalization or to reopen his application nunc pro tunc to the time between the application's approval and his leaving the United States.  We hold that appellant's failure to exhaust his administrative remedies prevents the federal courts from reviewing appellant's case.  We therefore affirm.

THOMAS E. MOSELEY, Newark, New Jersey, for Plaintiff-Appellant.

F. JAMES LOPREST, JR., Special Assistant United States Attorney (Michael J. Garcia, United States Attorney, on the brief, Ross E. Morrison, Assistant United States Attorney, of counsel), Office of the United States Attorney for the Southern District of New York, New York, New York, for Defendants-Appellees.

WINTER, Circuit Judge:

Jaime Borromeo Escaler brought the present action seeking an order compelling the United States Citizenship and Immigration Services ("CIS") either to issue him a certificate of

2

naturalization or to reopen his naturalization application <u>nunc</u> <u>pro</u> <u>tunc</u> to 1993. The CIS takes the position that appellant failed to take the required oath of allegiance in a public ceremony before leaving the United States for a period of time that rendered him out of compliance with the temporal naturalization requirements of residence and presence in the United States. Judge Jones denied appellant's motion for summary judgment and dismissed his action for lack of subject-matter jurisdiction. We affirm on the ground that appellant failed to exhaust his administrative remedies, and, therefore we cannot reach the merits.

BACKGROUND

Appellant was born in the Philippines in 1970. His mother is a United States citizen who had lived briefly in the United States as a child. In 1972, appellant moved to Hong Kong, where he lived until 1987, when he came to the United States and attended an American prep school. In March 1993, appellant applied to the Immigration and Naturalization Service ("INS") for naturalization as a United States citizen.

Becoming a naturalized U.S. citizen involves the completion of several steps: (i) maintaining five years' lawful permanent residence, physical presence in the United States for at least half of that time, and continuous residence from the date of application until admission to citizenship, 8 U.S.C. § 1427(a), 8 C.F.R. § 316.2(a); (ii) submitting an application, 8 U.S.C.

3

§ 1445(a), 8 C.F.R. § 316.4(a); (iii) passing a background check, 8 U.S.C. § 1446(a), 8 C.F.R. §§ 316.10, 335.1; (iv) passing a test of English proficiency and of knowledge of U.S. history and government, 8 U.S.C. § 1423(a), 8 C.F.R. §§ 312.1, 312.2; (v) being examined under oath by an immigration official, 8 U.S.C. § 1446(b), 8 C.F.R. §§ 316.14, 335.2; and (vi) taking an oath of allegiance to the United States "in a public ceremony," 8 U.S.C. § 1448(a); 8 C.F.R. § 337.1.

It is undisputed that, as of May 18, 1993, the date of his examination hearing, appellant had successfully completed (i)-(v) of these steps, and that the INS examiner approved appellant's application the same day. There is no record, however, of appellant's participation in step (vi), the public oath-taking ceremony. There is also no evidence of the INS notifying appellant of upcoming oath ceremonies that he might attend, 8 U.S.C. § 1421(b)(2)(B), or of appellant's having informed the INS of his new address when he left for Hong Kong, 8 U.S.C. § 1305(a). At his examination hearing, appellant did sign a document entitled "Declaration of Intention" which contained the text of the oath which the statute requires be used at naturalization ceremonies. 8 U.S.C. § 1448(a). However, the circumstances -- whether it was a "public" ceremony -- surrounding his signing of that document are not clear.

Six months after his interview and the examiner's approval of his application, appellant returned to Hong Kong to work. The

4

record before us does not indicate exactly how long appellant lived abroad after his interview, but it is undisputed that appellant remained outside of the United States for more than a year.

Appellant later re-entered the United States under authorized non-immigrant status, having been told that he had abandoned his status as a United States permanent resident before becoming a citizen. Appellant sent letters to the INS seeking recognition as a naturalized United States citizen. In October 2003, after those efforts were unsuccessful, appellant brought the present action to compel CIS, a successor agency to the former INS, either to issue him a Certificate of Naturalization or to enable him to resume his application for naturalization as of May 1993.

CIS then undertook a review of appellant's file. Observing that appellant had spent extensive time abroad after his naturalization interview and that 8 U.S.C. § 1427(a) prohibits the naturalization of any person who has not "resided continuously within the United States from the date of the application up to the time of admission to citizenship," CIS issued a notice of its intent to reopen appellant's application in June 2004, pursuant to 8 C.F.R. § 335.5. Appellant responded with letters stating that he had fulfilled all the requirements of citizenship by signing the oath at the May 1993 hearing. In September 2005, CIS reopened appellant's application. Appellant

argued that the reopening was a nullity because the present action had ousted the CIS of jurisdiction. The CIS District Director denied the reopened application on the grounds that appellant had failed to provide any reason to conclude that the information about his having left the country and thereby failing to comply with the residence requirement was incorrect. Although administrative procedures for appealing that ruling were available, appellant chose not to pursue them.

Following the denial of appellant's application, the district court dismissed the complaint both as moot and as beyond the court's jurisdiction in light of appellant's failure to exhaust his administrative remedies. Escaler brought the present appeal.

DISCUSSION

a) <u>Statutory Scheme</u>

Under the relevant statutory scheme, the Attorney General has the "sole authority to naturalize persons as citizens of the United States . . . ." 8 U.S.C. § 1421(a). As noted above, however, there are statutory standards governing naturalization, and naturalization decisions by the CIS (acting for the Attorney General) are subject to judicial review. There are three avenues of judicial review. First, if an application for naturalization is not acted upon within 120 days of the naturalization examination, an applicant can seek a hearing in a district court, which may determine the application or remand it to the CIS with

6

instructions. 8 U.S.C. § 1447(b). Second, if an application is denied after completion of the available administrative review procedures, the applicant is able to seek review of the denial in a district court. 8 U.S.C. § 1421(c). The court is empowered to conduct a de novo review, making "its own findings of fact and conclusions of law," and may conduct a hearing de novo. Id. Third, in extreme cases, mandamus relief may be available under 28 U.S.C. § 1361 for a failure to perform a clear, non-discretionary duty. Heckler v. Ringer, 466 U.S. 602, 616

(1984).[1]

b) <u>Application</u>

As noted, Section 1447(b) provides for a judicial hearing if, following an applicant's examination, 120 days pass without

[1]Appellant relies upon two other provisions that require only brief mention. First, he states that this matter involves "serious issues about the construction and application" of the Administrative Procedure Act ("APA"), <u>see</u> 5 U.S.C. §§ 701 <u>et</u> <u>seq.</u> Appellant's Br. at 11. No further detail regarding these supposed issues or their application to the present action has been provided. Nor have we been informed as to what judicial relief the APA might authorize that adds to the sweeping <u>de</u> <u>novo</u> review provided by Section 1421(c). We therefore do not speculate as to whether issues involving the APA have arisen in this matter.

Appellant also relies upon 8 U.S.C. § 1503(a), which permits the bringing of an action in federal court "[i]f any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States."

Appellant's complaint does not allege United States citizenship. He therefore is not "claim[ing] a right or privilege as a national of the United States . . . ." 8 U.S.C. § 1503(a). Rather, the complaint seeks as relief a declaration that he be made a citizen. Where some right or privilege of citizenship, e.g., obtaining a United States passport, <u>Strupp</u> <u>v. Dulles</u>, 258 F.2d 622, 622-23 (2d Cir. 1958), or gaining reentry into the United States, <u>Brassert v. Biddle</u>, 148 F.2d 134, 135 (2d Cir. 1945), is denied, the plaintiff's citizenship may of course be litigated. In such cases, the contested citizenship issue under Section 1503(a) would be whether the plaintiff had in fact been naturalized -- by administrative or judicial process or by operation of law, <u>see, e.g.</u>, <u>Yung Jin</u> <u>Teung v. Dulles</u>, 229 F.2d 244, 245 (2d Cir. 1956) (claiming citizenship by operation of law); <u>Lue Chow Kon v. Brownell</u>, 220 F.2d 187, 188 (2d Cir. 1955) (same); <u>Brassert</u>, 148 F.2d at 134-35 (claiming citizenship by the completion of an administrative process) -- not whether he or she is entitled to be naturalized. Because the relief appellant seeks is the overturning of a denial of naturalization, Section 1503(a) has no bearing on this action.

"a determination [by CIS] as to whether the application should be granted or denied . . . ." 8 U.S.C. §§ 1446(d), 1447(b). Because this provision is designed to remedy administrative inaction, there are no proceedings to exhaust for an applicant who invokes it. However, its terms simply do not apply to the circumstances in which appellant finds himself. His application was approved on the day of his examination.

If appellant is entitled to relief, it must be by way of Section 1421(c) or writ of mandamus, both of which require exhaustion of administrative remedies. See 8 U.S.C. §§ 1421(a), 1421(c); Heckler, 466 U.S. at 616. It is undisputed that appellant failed to pursue an appeal from the District Director's ruling after his reopened application was denied. The principal issue before us, therefore, is whether appellant needed to exhaust his administrative remedies.

Section 1421(c), authorizing de novo judicial review of the denial of an application to be naturalized, requires the exhaustion of administrative remedies prior to seeking that relief. See 8 U.S.C. § 1421(c). When, as here, the exhaustion requirement is established by statute -- in this case, the interaction of Section 1421(a), which vests the attorney general with sole authority in naturalization matters, with Section 1421(c) -- the requirement is "mandatory, and courts are not free to dispense with [it]." Bastek v. Fed. Crop Ins. Co., 145 F.3d 90, 94 (2d Cir. 1998).

9

Beyond the letters to the CIS described above, appellant did not participate in the reopened CIS proceedings and concededly did not exhaust available administrative review procedures. His claim, then and now, is that the present action gave the federal courts exclusive jurisdiction over his efforts to obtain citizenship and that the CIS's reopening and denial of his application were a nullity.

Appellant's argument relies upon Fourth and Ninth Circuit cases holding that district courts have exclusive jurisdiction over applications that are the subject of a Section 1447(b) action. See Etape v. Chertoff, 497 F.3d 379 (4th Cir. 2007); United States v. Hovsepian, 359 F.3d 1144 (9th Cir. 2004) (en banc).

However, these decisions are irrelevant in the present matter because, as discussed above, Section 1447(b) provides for judicial relief only from administrative inaction on an application and does not apply in appellant's circumstances. Administrative inaction, of course, prevents an applicant's exhaustion of administrative remedies. Leaving exclusive jurisdiction in the courts when a suit is brought under Section 1447(b), as in Etape and Hovsepian, is not at all inconsistent with a general insistence on exhaustion. Whatever merit the cited decisions may have with respect to Section 1447(b) actions, therefore, they do not apply here.

Requiring exhaustion of the reopened proceedings is also

supported by consideration of mandamus relief. Issuance of a writ of mandamus under 28 U.S.C. § 1361 is generally dependent upon exhaustion of other available remedies. Heckler, 466 U.S. at 616. However, when this action was brought, appellant may well have been entitled to some relief by way of mandamus. His application had been approved, rendering both Section 1447(b) and Section 1421(c) inapplicable. While the CIS treated his absence from the country as interrupting the process one act short of citizenship, appellant had at least two arguable claims. One claim was that he had fulfilled the public oath requirement by signing the oath in the Declaration of Intention, which is identical to the oath given in the familiar public naturalization ceremonies in district courts. The other claim was that he is entitled to relief because the CIS failed to notify him of scheduled ceremonies as required by 8 U.S.C. § 1421(b)(2)(B).

Of course, mandamus is an extraordinary remedy, intended to aid only those parties to whom an official or agency owes "a clear nondiscretionary duty." Heckler, 466 U.S. at 616; see also Daumutef v. INS, 386 F.3d 172, 180 (2d Cir. 2004). A party who seeks a writ of mandamus must show a "'clear and indisputable' right" to its issuance. Miller v. French, 530 U.S. 327, 339 (2000) (quoting Mallard v. U.S. Dist. Court for S. Dist. of Iowa, 490 U.S. 296, 309 (1989)). Appellant has not met this burden.

Courts have held the public oath requirement to be a statutory necessity, see Ajlani v. Chertoff, 545 F.3d 229, 234

11

(2d Cir. 2008); Okafor v. Gonzales, 456 F.3d 531, 534 (5th Cir. 2006); Abiodun v. Gonzales, 461 F.3d 1210, 1215-16 (10th Cir. 2006), and to date no court has held that signing the Declaration of Intention fulfills that requirement, see, e.g., Okafor, 456 F.3d at 534; Abiodun, 461 F.3d at 1015-16.  While giving notice of scheduled ceremonies is a CIS duty, 8 U.S.C. § 1421(b)(2)(B), there is little authority on the effect of, or relief from, a failure to do so.  But cf. Baidas v. Jenifer, 123 F. App'x 663, 670-71 (6th Cir. 2005); Patel v. INS, No. 98CV1937 JCH, 2000 WL 298921, *2 (E.D.Mo. Jan. 20, 2000).  Some administrative guidance is, therefore, highly desirable and might have been obtained by following available administrative proceedings.

However, when this action was brought, appellant had no clear avenue of review of his claims.  As noted, because his application remained approved, there was no inaction on his application from which relief under Section 1447(b) was available, and there was no denial of the application from which to seek relief under Section 1421(c).  Asking the CIS to reopen an already approved application would not only have been an anomalous act -- what would be the relief requested -- but risked being taken as an admission that he was not eligible for immediate naturalization.  Appellant, therefore, appears to have been in administrative limbo, and the ball was arguably in the CIS's court.  An agency may well have a clear, non-discretionary duty not to leave an applicant with arguable claims no clear

12

avenue to litigate them. While the merits of appellant's mandamus claim would not justify directing the issuance of a certificate of citizenship, the lack of a clear avenue to raise his claims before the CIS might have justified a writ directing CIS to reopen his application to resolve those claims. See Crawford v. Cushman, 531 F.2d 1114, 1126 n.15 (2d Cir. 1976) ("Mandamus jurisdiction [under] 28 U.S.C. § 1361 permits flexibility in remedy . . . .") (internal quotation marks omitted); see, e.g., Manmouth Med. Ctr. v. Thompson, 257 F.3d 807, 813-15 (D.C. Cir. 2001) (issuing mandamus writ ordering agency to reopen proceedings).

We need not decide any of this, however. This issue became moot when the CIS reopened appellant's application. Appellant's conceded failure to take advantage of that proceeding to litigate his claims negates our jurisdiction over the present action.

CONCLUSION

We affirm.

13