*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0251p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

THANAPONG SAKARAPANEE,

          *Petitioner-Appellant,*

    *v.*

DEPARTMENT OF HOMELAND SECURITY,
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

          *Respondent-Appellee.*

No. 09-6197

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 08-01017—John T. Nixon, District Judge.

Argued: July 28, 2010

Decided and Filed: August 19, 2010

Before: GILMAN and COOK, Circuit Judges; and OLIVER, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Stephen E. Grauberger, GRAUBERGER, PIERCE & GREEN, PLLC, Mt. Juliet, Tennessee, for Appellant. Kimberly E. Wiggans, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Stephen E. Grauberger, GRAUBERGER, PIERCE & GREEN, PLLC, Mt. Juliet, Tennessee, for Appellant. Kimberly E. Wiggans, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Mercedes C. Maynor-Faulcon, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

_____

[*] The Honorable Solomon Oliver, Jr., Chief United States District Judge for the Northern District of Ohio, sitting by designation.

———————————

**OPINION**

———————————

RONALD LEE GILMAN, Circuit Judge. Thanapong Sakarapanee, a citizen of Thailand but a long-time legal resident of the United States, applied for naturalization. The agency known as United States Citizenship and Immigration Services (USCIS), a part of the Department of Homeland Security, denied his application because Sakarapanee had previously sought and received an early discharge from the United States Navy based on his status as an alien. After administratively appealing USCIS's decision with no success, Sakarapanee filed a petition in the district court to contest the denial of his naturalization application. The district court dismissed his petition. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Sakarapanee is a native and citizen of Thailand. He was brought to the United States by his parents when he was one-year old and later became a lawful permanent resident. Sakarapanee joined the Navy in August 1990. After being subjected to what he describes as a "racially motivated assault," Sakarapanee sought to leave the Navy prior to the expiration of his contractual commitment. He was mustered out in July 1991, receiving an honorable discharge due to the fact that he was an alien. The technical name for this procedure is called a "discharge on the basis of alienage." Aliens serving in the Armed Forces are entitled to request such discharges, although federal law prevents aliens who are discharged in this fashion from ever becoming naturalized United States citizens. *See* INA § 315(a), 8 U.S.C. § 1426(a). Indeed, Sakarapanee was told during his exit interview that, if he sought and accepted a discharge on the basis of alienage, he would be permanently barred from becoming a U.S. citizen. He nevertheless accepted a discharge on that basis.

Roughly three-and-a-half years later, in February 1995, Sakarapanee applied to become a naturalized U.S. citizen pursuant to the general naturalization provisions

contained in INA § 316, 8 U.S.C. § 1427. The Immigration and Naturalization Service (INS) denied his application, pursuant to INA § 315, because of his discharge on the basis of alienage. (The INS was the precursor agency to USCIS.) Sakarapanee was advised of his right to appeal the INS's denial of his application, but failed to do so.

In April 2005, Sakarapanee once again applied for naturalization, this time pursuant to INA § 329(a), 8 U.S.C. § 1440(a). INA § 329 allows aliens who have served in the Armed Forces during certain periods of martial conflict to apply for expedited naturalization. *See id.* USCIS denied Sakarapanee's application, again finding him ineligible due to his 1991 discharge from the Navy on the basis of alienage. Sakarapanee appealed the decision within USCIS, but the agency upheld the denial after a hearing.

He then filed a petition in the United States District Court for the Middle District of Tennessee, seeking review of USCIS's decision. Sakarapanee alleged that he had met all of the applicable criteria for naturalization under INA § 329, referencing both that statute and the general naturalization requirements of INA § 316. Pursuant to Rules 12(b)(1) and 12(c) of the Federal Rules of Civil Procedure, USCIS moved to dismiss in part and for judgment on the pleadings in part. The district court granted the motion. Sakarapanee now appeals.

## II.  ANALYSIS

### A.    Standard of review

We review do novo the grant of motions under Rules 12(b)(1) and 12(c) of the Federal Rules of Civil Procedure. *Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917, 919 (6th Cir. 2009) (regarding Rule 12(b)(1)); *Cincinnati Ins. Co. v. Beazer Homes Invs., LLC*, 594 F.3d 441, 444 (6th Cir. 2010) (regarding Rule 12(c)). In an application for naturalization, the applicant has the burden of proof to establish his or her eligibility. *Berenyi v. Dist. Dir. INS*, 385 U.S. 630, 637 (1967).

**B.     Discussion**

Sakarapanee's sole argument on appeal is that this court should extend the interpretation of INA § 315 rendered by the United States Court of Appeals for the Ninth Circuit in *Gallarde v. INS*, 486 F.3d 1136 (9th Cir. 2007), to apply to the language of INA § 329.  Doing so in the manner suggested by Sakarapanee would enable him to become a naturalized citizen by avoiding the disqualifying language in the latter statute.

*1.  The Ninth Circuit's decision in* **Gallarde**

In *Gallarde*, the Ninth Circuit addressed a challenge to the application of INA § 315 with regard to an alien who had enlisted in the Armed Forces.  That statute, as mentioned earlier, bars an alien from becoming a U.S. citizen if he or she was either discharged or found exempt from serving in the Armed Forces based on his or her "status as an alien."  Specifically, the applicable portion of the statute reads as follows:

> [A]ny alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

INA § 315(a), 8 U.S.C. § 1426(a).

The Ninth Circuit found the term "training or service in the Armed Forces" to be ambiguous. *Gallarde*, 486 F.3d at 1141.  After a lengthy review of the legislative history regarding INA § 315, that court concluded that the term referred only to aliens drafted by the Armed Forces, not to aliens who voluntarily enlisted. *Id.* at 1141-49.  The court accordingly held that aliens who voluntarily enlisted in the Armed Forces and then sought discharge on the basis of alienage were not permanently barred from achieving U.S. citizenship. *Id.* at 1143, 1149.

Considering that the United States suspended the military draft in 1973 (*see* Doug Bandow, *Tracing Volunteer Military Service*, The Washington Times, Dec. 23, 2009, at A15), so that presumably all aliens now serving in the Armed Forces voluntarily

enlisted, the Ninth Circuit's ruling has broad implications. Because of *Gallarde*, legal aliens serving in the Armed Forces, at least those living within the Ninth Circuit, are not permanently barred from U.S. citizenship should they seek to be discharged on the basis of alienage. *Gallarde*'s interpretation of INA § 315 was a first in the over 50-year history of that statute. *See DiCicco v. U.S. Dept. of Justice INS*, 873 F.2d 910, 913 (6th Cir. 1989) (explaining generally that "[i]t is not disputed that [INA § 315] bars citizenship for persons who receive a military discharge based on alienage"). No other court has joined the Ninth Circuit in its interpretation of INA § 315, and the government stated at oral argument that it believes *Gallarde* to have been wrongly decided.

### 2. Gallarde*'s application to Sakarapanee's case*

Sakarapanee is not asking us to adopt the Ninth Circuit's decision by similarly interpreting INA § 315. In fact, he cannot make such an argument because his current (2005) application for naturalization does not involve that statute. Sakarapanee could have made such an argument if he were appealing his first application for naturalization that he filed in 1995, which the INS denied based on INA § 315. He failed to exhaust his administrative remedies on that application, however, and thus cannot contest the denial in this appeal. *See Escaler v. U.S. Citizenship & Immigration Servs.*, 582 F.3d 288, 292 (2d Cir. 2009) (explaining that "judicial review of the denial of an application to be naturalized [] requires the exhaustion of administrative remedies prior to seeking" such review).

Sakarapanee is thus left to argue that *Gallarde*, although limited to the specific language in INA § 315, should be extended to all statutes that impose a bar to U.S. citizenship based upon an alienage discharge from the Armed Forces. And USCIS applied such a bar, which is contained within INA § 329, to deny Sakarapanee's second naturalization application.

A significant problem with his argument is that the language within INA § 329 materially differs from that at issue in *Gallarde*. There, the Ninth Circuit found the term "training or service in the Armed Forces" to be ambiguous. *Gallarde*, 486 F.3d at 1141.

But that term is not contained within INA § 329.  Instead, the applicable portion of the latter statute reads as follows:

> Any person who, while an alien or a noncitizen national of the United States, has served honorably . . . in an active-duty status in the military, air, or naval forces of the United States . . . during any . . . period which the President by Executive order shall designate as a period in which Armed Forces of the United States are or were engaged in military operations involving armed conflict with a hostile foreign force, and who, if separated from such service, was separated under honorable conditions, may be naturalized as provided in this section if (1) at the time of enlistment, reenlistment, extension of enlistment, or induction such person shall have been in the United States . . . or (2) at any time subsequent to enlistment or induction such person shall have been lawfully admitted to the United States for permanent residence.  The executive department under which such person served shall determine whether persons have served honorably in an active-duty status, and whether separation from such service was under honorable conditions: *Provided, however*, That no person who is or has been separated from such service on account of alienage . . . shall be regarded as having served honorably or having been separated under honorable conditions for the purposes of this section.

INA § 329(a) (emphasis in original).

This passage reveals no similarly "ambiguous" language comparable to that interpreted by the Ninth Circuit in INA § 315.  Indeed, INA § 329 plainly indicates that it applies to all service members, both enlisted and drafted.  The statute specifically mentions that aliens are eligible for its provisions if they joined the Armed Forces through "enlistment, reenlistment, extension of enlistment, or induction." *Id.*

Sakarapanee tries to create ambiguity by arguing that the term "separated from such service on account of alienage" within the proviso of INA § 329 is unclear.  Relying on this purported ambiguity, Sakarapanee urges us to extend *Gallarde* and rule that "separated from such service on account of alienage" can mean only "separated from *involuntary* service on account of alienage."  But this interpretation strikes us as illogical considering that, as discussed above, INA § 329's expedited naturalization provision applies to alien service members who enlist as well as to those who are

drafted. We can envision no reason why the main body of the statute would apply to both types of service members and yet the proviso would apply only to draftees. Nothing in the statute suggests such a result.

In addition, we believe that the meaning of "such service" is clear. The term refers back to the service discussed within the main body of the statute; i.e., to "active-duty status in the military, air, or naval forces of the United States." *See* INA § 329(a). And, as explained above, this service covers both volunteer and drafted service members. Separation "from such service on account of alienage" thus logically refers to both volunteers and draftees who choose to be discharged on the basis of alienage. Accordingly, the plain language of INA § 329 defeats Sakarapanee's proffered interpretation.

INA § 329 rewards alien service members who serve during periods of combat, and provides a disincentive for them to prematurely leave the Armed Forces during such periods; in other words, it serves as both a carrot and a stick. But under Sakarapanee's interpretation, the disincentive would apply only to those service members who were drafted, not to those who enlisted. Thus, an alien lawfully in the United States who initially was willing to serve but later changed his or her mind (like Sakarapanee) could promptly seek a discharge based on alienage and still be able to take advantage of INA § 329's expedited-naturalization procedures. An alien who was drafted and later discharged on the basis of alienage, however, would be ineligible for expedited naturalization under that section, even if he or she served for a longer period of time. This perverse outcome reinforces the weakness of Sakarapanee's suggested interpretation of INA § 329.

Furthermore, *Gallarde* itself does not support Sakarapanee's argument. The court in *Gallarde* did not discuss what "separation from such service on account of alienage" means. That decision substantively addressed only the definition of the term "training or service in the Armed Forces." *See Gallarde*, 486 F.3d at 1140-41. Moreover, *Gallarde* distinguished INA § 329 from INA § 315 by concluding that the citizenship bar in § 329 *does apply* to volunteers as well as to draftees:

> Congress's use in § 329 of the phrase "enlistment or induction" is also instructive because it demonstrates that where Congress intended to impose a disability upon aliens discharged from *voluntary* training or serving in the Armed Forces on the basis of alienage it did so expressly by including both "enlistment," a term denoting voluntary military service . . . and "induction" a term denoting involuntary military service.

*Gallarde*, 486 F.3d at 1143 (emphasis in original) (citation omitted).  *Gallarde*, therefore, actually undercuts Sakarapanee's current argument.

Accordingly, even in the Ninth Circuit, "separation from such service on account of alienage" continues to mean the same thing as it did before *Gallarde* with regard to the expedited-naturalization procedures set forth in INA § 329.  Any interpretation to the contrary would make the citizenship bar of INA § 329 a meaningless anachronism because the Armed Forces are now composed almost entirely of volunteers.  Applying it only to draftees would thus in effect apply it to no one.  Courts generally construe statutes in a way to avoid making provisions meaningless. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (noting that the Court's duty is "to give effect, if possible, to every clause and word of a statute").  In sum, despite the Ninth Circuit's decision in *Gallarde*, we find no legal support for Sakarapanee's suggested reading of INA § 329.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.