**Ghazanfar IQBAL, Plaintiff,**

v.

**SECRETARY U.S. DEPARTMENT OF HOMELAND SECURITY; Director U.S. Department of Homeland Security U.S. Citizenship and Immigration Services; Director, Vermont Service Center, U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services; Attorney General of the United States, U.S. Department of Justice; United States Attorney for the Western District of New York, Defendants.**

**1:15-CV-00650 EAW**

United States District Court, W.D. New York.

Signed 06/06/2016

---

Ghazanfar Iqbal, Buffalo, NY, pro se.

Gail Y. Mitchell, U.S. Attorney's Office, Buffalo, NY, for Defendants.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, United States District Judge

## INTRODUCTION

This case presents somewhat of a procedural quagmire for the *pro se* plaintiff Ghazanfar Iqbal ("Plaintiff"), who has been attempting to become a naturalized citizen since September 2009. Plaintiff's initial application was denied on March 1, 2011, and Plaintiff promptly filed an administrative appeal with United States Citizenship and Immigration Services ("USCIS"). Frustrated that after many years a decision had not been made with respect to his administrative appeal, Plaintiff commenced this litigation on July 21, 2015. Within a matter of weeks thereafter, USCIS reached a decision denying Plaintiff's administrative appeal, but it has delayed issuing that determination because of the pending litigation. In the meantime, Defendants filed a motion to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that this Court lacks subject matter jurisdiction over the complaint be-

cause USCIS has not yet issued its final decision, and because none of the other grounds for challenging USCIS's handling of this matter are present. As explained in further detail below, Defendants' motion to dismiss must be granted as the Court lacks subject matter jurisdiction, even though in all likelihood the parties will be right back before this Court in short order, once USCIS issues its final decision.

## FACTUAL BACKGROUND

According to Plaintiff, he has been a permanent resident of the United States since 1997. (Dkt. 1 at 5). He has been together with his wife, who is a United States citizen, since 1996, and they have four children together, all of whom are citizens of the United States. (Dkt. 1 at 5, 8-11). Plaintiff is educated, with a bachelor's degree in engineering, and in 2001, he formed a business called IMPEXcom Inc., working as its president from 2001 through 2006. (Dkt. 1 at 5). IMPEXcom Inc. ceased its operation in Texas in 2006. (Dkt. 1 at 5).

On September 14, 2009, Plaintiff filed an Application for Naturalization, Form N-400, as permitted by the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. ("INA"). Plaintiff applied pursuant to 8 U.S.C. § 1427 and he was interviewed on December 8, 2010. (Dkt. 1 at 5; Dkt. 5–2 at 13; Dkt. 5–3 at 2). On March 1, 2011, Plaintiff's application was denied on the grounds that he had failed to disclose past due taxes. (Dkt. 1 at 5; Dkt. 5–3 at 4-8). In denying Plaintiff's application, USCIS cited to the requirement in 8 U.S.C. § 1427(a) that an applicant "during all the periods referred to in this subsection has

been and still is a person of good moral character," and the explanation in 8 U.S.C. § 1101(f) that "[n]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was ... (6) one who has given false testimony for the purpose of obtaining any benefits under this chapter." (Dkt. 5–3 at 5-6).

According to USCIS, during Plaintiff's December 2010 interview, he answered negatively to a series of questions concerning taxes and providing false information during immigration processes,[1] despite the existence of a Certificate of Account Status issued by the Texas Comptroller of Public Accountants from November 18, 2009, stating that IMPEXcom Inc. "is not in good standing as it has not satisfied all franchise tax requirements." (Dkt. 5–3 at 6). According to USCIS's denial letter, US-CIS asked Plaintiff about the information in the certificate and Plaintiff maintained that he had paid all taxes that were due, but then he requested more time to resolve the matter. (Dkt. 5–3 at 7). Thereafter, Plaintiff provided USCIS with documents allegedly acknowledging that he had failed to file the proper tax forms for IMPEXcom Inc. and showing that he had subsequently filed the necessary tax paperwork after his interview. (Dkt. 5–3 at 7). In light of the foregoing, USCIS concluded that Plaintiff gave false testimony concerning his past due taxes, and it also concluded that there remained an outstanding question as to whether Plaintiff had properly fulfilled all state tax requirements and paid all taxes owed. (Dkt. 5–3 at

---

1.. Plaintiff allegedly falsely answered the following questions in the negative: (1) "Since becoming a Lawful Permanent Resident, have you ever failed to file a required Federal, state or local tax return?"; (2) "Do you owe any Federal, state or local taxes that are over-due?"; and (3) "Have you ever given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal?" (Dkt. 5–3 at 6).

7). Accordingly, on March 1, 2011, USCIS denied Plaintiff's application for naturalization. (Dkt. 5-3 at 4, 7).

On March 30, 2011, Plaintiff filed a Form N-336 to administratively challenge USCIS's decision, pursuant to 8 U.S.C. § 1447(a). (Dkt. 1 at 5). Plaintiff attended two interviews in relation to his § 1447(a) administrative appeal, on March 13, 2012, and April 9, 2015. (Dkt. 1 at 6).

As noted above, within a matter of weeks after commencement of this litigation, USCIS made a final determination on Plaintiff's § 1447(a) administrative appeal, but has delayed issuing its determination until the agency's jurisdiction to do so is confirmed by the Court. (Dkt. 6 at 7).[2] USCIS's final determination affirms the denial of Plaintiff's application, but vacates the original reason for denial, concluding that the initial reasons for denying Plaintiff's application were "incorrect and incomplete." (Dkt. 5-3 at 14). Nonetheless, USCIS maintains that Plaintiff provided false testimony, albeit with respect to his employment and involvement with others' immigration papers, rather than taxes. (Dkt. 5-3 at 14-15). Plaintiff allegedly did not disclose in his initial application for naturalization that he had owned a halal meat store, Kohinoor, from 2003 to 2005. (Dkt. 9 at 4-5; Dkt. 5-3 at 14-15). Plaintiff also, according to USCIS's final determination, signed immigration documents for an H1-B visa applicant who never came to the United States, and for the man from whom he had bought Kohinoor. (Dkt. 5-3 at 15). Concluding that it was unreasonable for Plaintiff to have simply forgotten his previous ownership of Kohinoor during his initial interview, and to have been unaware of signing immigration papers as part of the Kohinoor transaction, as Plaintiff claimed, USCIS is prepared to issue a final decision denying Plaintiff's application to become a naturalized citizen. (Dkt. 5-3 at 15).

## DISCUSSION

### I. Standard of Review

■■■ "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). "When considering a motion to dismiss for lack of subject matter jurisdiction ..., a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir.2008) (citation omitted). "Indeed, a challenge to the jurisdictional elements of a plaintiff's claim allows the Court 'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 289 F.Supp.2d 392, 399 (S.D.N.Y.2003) (citation omitted), *aff'd*, 403 F.3d 76 (2d Cir.2005). "The court may consider affidavits and other materials beyond the pleadings but cannot 'rely on conclusory or hearsay

---

**2.** Defendants cite to *Bustamante v. Napolitano*, 582 F.3d 403 (2d Cir.2009), to support the principle that once a complaint is filed under 8 U.S.C. § 1447(b), the district court has exclusive jurisdiction over a naturalization application. However, the Second Circuit in *Bustamante* based its decision on a "proper" § 1447(b) petition having been filed with the district court. In this case, according to Defendants' own argument, the petition filed by Plaintiff is not proper, and in fact, this Court lacks subject matter jurisdiction. Thus, the Court questions whether, in fact, the pending litigation truly divested USCIS of jurisdiction to issue its final decision.

statements contained in the affidavits.'" *Young v. United States*, No. 12–CV–2342 (ARR)(SG), 2014 WL 1153911, at *6 (E.D.N.Y. Mar. 20, 2014) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir.2004)). *See Luckett v. Bure*, 290 F.3d 493. 497 (2d Cir.2002) ("[T]he district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.").

■ In addition, "[i]t is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citation omitted); *see also Hemphill v. New York*, 380 F.3d 680, 687 (2d Cir. 2004) ("It is well-established that 'when [a] plaintiff proceeds *pro se* ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.'") (alteration in original) (citation omitted). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir.1984).

## II. Subject Matter Jurisdiction in Naturalization Application Proceedings

"The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." 8 U.S.C. § 1421. However, "[t]here are three avenues of judicial review." *Escaler v. U.S. Citizenship and Immigration Servs.*, 582 F.3d 288, 290–91 (2d Cir.2009).

■ "First, if an application for naturalization is not acted upon within 120 days of the naturalization examination, an applicant can seek a hearing in a district court, which may determine the application or remand it to [USCIS] with instructions."

*Id.* at 291; *see Bustamante v. Napolitano*, 582 F.3d 403, 410 (2d Cir.2009) (noting that district courts have jurisdiction over naturalization applications when USCIS "fails to decide an application in a timely fashion"). This first avenue of review, where an application is not acted upon within the 120-day time period, is pursuant to 8 U.S.C. § 1447(b).

■ "Second, if an application is denied after completion of the available administrative review procedures, the applicant is able to seek review of the denial in a district court." *Escaler*, 582 F.3d at 291; *see Bustamante*, 582 F.3d at 410 (noting district courts have jurisdiction over naturalization applications when USCIS denies an application). This second avenue of review is pursuant to 8 U.S.C. § 1421(c).

■ Finally, the third avenue for judicial intervention is based upon 28 U.S.C. § 1361 which allows for mandamus relief "for a failure to perform a clear, nondiscretionary duty." *Escaler*, 582 F.3d at 291 (citing *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984)). In other words, this final potential avenue of relief is not specified in the INA, and is considered an "extraordinary remedy, intended to aid only those parties to whom an official or agency owes 'a clear nondiscretionary duty.'" *Id.* at 292 (citation omitted).

### A. Plaintiff is not entitled to § 1447(b) Relief

■ Plaintiff asserts that this Court has jurisdiction to hear the claim under 8 U.S.C. § 1447(b) on the basis that Defendants have not made a determination on Plaintiff's application within the statutory 120-day period measured from his initial naturalization interview. (Dkt. 1 ¶¶ 8-9). Defendants argue that the Court does not have subject matter jurisdiction under this

provision because USCIS did, in fact, issue a decision on Plaintiff's naturalization application within the 120-period from Plaintiff's initial interview. (Dkt. 6 at 6-7, 15-16).

Section 1447(b) provides:

If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b). Accordingly, "[i]f USCIS does not render a decision for more than 120 days after the initial examination, Section 1447(b) provides for judicial intervention at the election of the naturalization applicant" and the "district court's jurisdiction under Section 1447(b) vests with a naturalization applicant's petition for a hearing in the absence of a timely decision by USCIS." *Bustamante*, 582 F.3d at 406. "The plain language of Section 1447(b) makes clear that a plaintiff can only seek a hearing in a district court if USCIS has *not* made a determination regarding his naturalized application." *Iqbal v. Holder*, No. 09 cv 5695 (BMC), 2010 WL 769316, at *2 (E.D.N.Y. March 4, 2010) (emphasis in original).

In *Iqbal*, the plaintiff challenged USCIS's denial of his naturalization application through the administrative appeal process created by 8 U.S.C. § 1447(a). *Id.* at *1. Plaintiff also filed a claim requesting a hearing before a district court on defendant's failure to act within 120 days on his naturalization application pursuant to § 1447(b) while his administrative appeal was pending. *Id.* The court determined

that § 1447(b) did not create a cause of action as to the administrative appeal stage, stating.

[p]laintiff mistakenly construes Section 1447(b) as applying to his Appeal; however, an applicant can only exercise his options under this statute after an examination is conducted for the initial application. The statute's remedies are not available to an applicant after the USCIS has rendered an initial decision and, as in this case, takes a lengthy period of time to render a decision on appeal.

*Id.* at *2. Consequently, the court granted the defendants' motion to dismiss. *Id.*

Plaintiff here has mistakenly initiated the present suit under § 1447(b) in much the same way as the plaintiff in *Iqbal* did. Plaintiff's initial interview took place on December 8, 2010, (Dkt. 5-2 at 13; Dkt. 5-3 at 2), and his application was denied on March 1, 2011, 83 days after his initial interview. (Dkt. 1 at 5; Dkt. 5-3 at 4). This denial was well within the statutory 120-day allotment of § 1447(b). Plaintiff does not contest that his initial application was, in fact, decided and denied. Pie states in his complaint, "[m]y application was denied on the basis that IMPEXcom Inc. did not file her No Fax Due Reports," and, "I was denied Naturalized Citizen status because IMPEXcom Inc. failed to file her No Tax Due Reports." (Dkt. 1 at 5). Because § 1447(b) applies only to the initial application—not to an administrative appeal under § 1447(a)—and because USCIS <u>did</u> make a decision on Plaintiff's initial application within 120 days, this Court does not have subject matter jurisdiction pursuant to § 1447(b).

### B. Plaintiff is not entitled to § 1421(c) Judicial Review

 Defendants further argue that this Court cannot find subject matter under 8 U.S.C. § 1421(c) because Plaintiff

has not yet exhausted his administrative remedies, thus precluding him from seeking review of the administrative appeal process in the district court. (Dkt. 6 at 17). Plaintiff responds that, because Defendants failed to schedule a hearing within 180 days of his § 1447(a) administrative appeal being filed, as required by 8 C.F.R. § 336.2, this matter is "an extreme case of unreasonable delay by USCIS" and that he "did wait, realistically enough, to exhaust all administrative remedies." (Dkt. 9 at 2). While by no means suggesting that USCIS's delay in this case was reasonable, the Court agrees with Defendants that it does not have jurisdiction to entertain Plaintiff's complaint pursuant to § 1421(c).

Section 1447(a) provides an applicant whose application was denied under § 1447(b) with the opportunity to request a hearing before an immigration officer—an administrative appeal. See 8 U.S.C. 1447(a). USCIS must schedule the § 1447(a) review hearing "within a reasonable period of time not to exceed 180 days from the date upon which the appeal is filed." 8 C.F.R. § 336.2(b). 8 U.S.C. § 1421(c) creates an avenue for judicial review of the § 1447(a) administrative appeal:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides.... Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c).

"Section 1421(c) ... requires the exhaustion of administrative remedies prior to seeking that relief." *Escaler*, 582 F.3d at 292. "When ... the exhaustion requirement is established by statute—in this case, the interaction of Section 1421(a), which vests the attorney general with sole authority in naturalization matters, with Section 1421(c)—the requirement is 'mandatory, and courts are not free to dispense with [it].'" *Id.* (alteration in original) (quoting *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir.1998)).

The plain language of § 1421(c) makes clear that, in order for a plaintiff's claim to be eligible for judicial review, the administrative appeal must have concluded in a denial of the plaintiff's application. See 8 U.S.C. § 1447(c); see also *Baez–Fernandez v. I.N.S.*, 385 F.Supp.2d 292, 294 (S.D.N.Y. 2005) (noting that one of the two points at which a district court can intervene in the naturalization process is "when [USCIS] has denied a naturalization application and that denial has been affirmed on administrative appeal"); *Phong Thi Vu v. Mayorkas*, No. 12CV1933 JLS, 2013 WL 2390557, at *5 (S.D.Cal. May 30, 2013) ("Petitioners filed administrative appeals with USCIS ... but have yet to receive a final determination from the agency, such that de novo review under § 1421(c) would be premature."); *Liu v. U.S. Dept. of Homeland Sec.*, No. 10–cv–2823, 2010 WL 5232938, at *4 (N.D.Ill. Dec. 16, 2010) ("Plaintiff's ... request for leave to amend her complaint so that she can proceed under 8 U.S.C. § 1421(c) is premature because the administrative appeal of the denial of Plaintiff's naturalization application is still pending before USCIS."). Denial of the administrative appeal represents the necessary exhaustion of a plaintiff's administrative remedies.

Additionally, nowhere in the INA does the statute grant a district court jurisdiction if USCIS fails to act within the 180-day limit prescribed by 8 C.F.R. § 336.2.

*See Singh v. Chertoff*, No. CV F 06–1895 AWI DLB, 2007 WL 1119787, at *4 (E.D.Cal. Apr. 16, 2007) ("Given that Section 1447(b) specifically provides jurisdiction if [USCIS] fails to act within 120 days during the examination process, Congress clearly knew how to give this court jurisdiction over stalled applications. By not specifically providing for jurisdiction if [USCIS] fails to act within 180 [days] when conducting an appeal, the plan [sic] language of . . . Section 1447 clearly shows Congress's desire to not have the court interfere with the appeals of applications that have been delayed after denial at the first level."). *See also Phong Thi Vu*, 2013 WL 2390557, at *5 ("In sum, Petitioners' applications are languishing at a specific step in the administrative naturalization process during which judicial review is temporarily unavailable.").

In *Singh*, the plaintiff asked the court to deem the defendants' delay in holding an administrative appeal hearing and issuing a final decision as a "final denial of his application" and to "review [USCIS's] denial pursuant to 8 U.S.C. § 1421(c)." *Singh*, 2007 WL 1119787, at *3–4. The court acknowledged that it could not find "any authority for the proposition that the failure of a senior hearing officer to hold a hearing and rule on an appeal within 180 deems the appeal denied," and concluded that delay on the agency's part was not a substitute for the requisite exhaustion of administrative remedies. *Id.* at 4.

Here, USCIS has not yet issued a decision on Plaintiff's administrative appeal pursuant to § 1447(a). Because § 1421(c) grants a district court jurisdiction only upon a plaintiff's mandatory exhaustion of

his remedies, i.e., a final denial of a plaintiff's naturalization application, and because Plaintiff's administrative remedies have not yet been exhausted, this Court does not have jurisdiction. Further, USCIS's failure to adhere to its 180-day limit to schedule a hearing[3] does not create an alternative route to judicial review, and extreme delay on the part of the agency does not extinguish the requirement that Plaintiff exhaust his administrative remedies.

## C. Plaintiff is not entitled to 28 U.S.C. § 1361 Mandamus Relief

■ As Defendants acknowledge, it is within this Court's purview to construe *pro se* Plaintiff's pleading broadly as one for mandamus. *See Green*, 260 F.3d at 83. However, the Court concludes that the extraordinary remedy of mandamus would be inappropriate in this case.

■ "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). "A party who seeks a writ of mandamus must show a '"clear and indisputable" right' to its issuance." *Escaler*, 582 F.3d at 292 (quoting *Miller v. French*, 530 U.S. 327, 339, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000)). Plaintiff has not met this burden.

Plaintiff has not exhausted his administrative remedies and there is no clear, nondiscretionary duty for USCIS to issue its decision on Plaintiff's administrative appeal within a particular timeframe.[4] As

---

**3.** Even if USCIS's failure to act within 180 days to schedule the hearings did create jurisdiction, the point would be moot on these facts since Plaintiff has already had two re-

view hearings pursuant to his § 1447(a) administrative appeal.

**4.** Although not raised by Plaintiff, the Court could arguably view USCIS's release of its

described above, Plaintiff's administrative remedies are not exhausted until a final denial on his administrative appeal has been issued. Additionally, there is no statute or regulation creating a nondiscretionary duty as to the time in which USCIS must issue a final decision after there has been an administrative appeal hearing— the 180-day time limit only pertains to the time during which USCIS must schedule a hearing. *See* 8 C.F.R. § 336.2. For these reasons, Plaintiff is not entitled to mandamus relief.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (Dkt. 5) is granted. The dismissal of the complaint is without prejudice.

SO ORDERED.

final decision, which USCIS has delayed until this Court confirms USCIS's jurisdiction to do so, as a nondiscretionary duty on the part of USCIS, for which mandamus relief could apply. In other words, now that USCIS has reached its final decision, Plaintiff may have been able to seek mandamus relief from the Court to compel USCIS to release its final decision. However, even under a broad reading of Plaintiff's papers, he has not sought this relief. Moreover, the Court views any such relief as unnecessary given USCIS's representations that it is simply waiting for the Court to determine the pending motion to dismiss before releasing its decision.