08-0990-cv
Bustamante v. Napolitano

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued: March 27, 2009                                  Decided: September 28, 2009)

Docket No. 08-0990-cv

_____

CARLOS BUSTAMANTE,

Plaintiff-Appellant,

v.

JANET A. NAPOLITANO, Secretary of U.S. Department of Homeland Security, JONATHAN
R. SCHARFEN, Acting Director, U.S. Citizenship and Immigration Services,* ANDREA
QUARANTILLO, District Director, New York District, USCIS, MARK J. MERSHON,
Assistant Director in Charge, Federal Bureau of Investigation,

Defendants-Appellees.

_____

Before: STRAUB, POOLER, RAGGI, Circuit Judges.

_____

Plaintiff-appellant Carlos Bustamante appeals from a judgment of the United States

District Court for the Southern District of New York (McMahon, J.), granting defendants-

appellees' motion to dismiss the complaint as moot. The issue on this appeal is whether United

_____

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Secretary of the United States Department of
Homeland Security Janet A. Napolitano is automatically substituted for former Secretary Michael Chertoff; Jonathan
R. Scharfen is automatically substituted for former Director of USCIS Emilio T. Gonzalez.

1

States Citizenship and Immigration Services ("USCIS") can still decide a naturalization application after an applicant files a petition in district court pursuant to 8 U.S.C. § 1447(b). Section 1447(b) provides that an applicant can bring a petition to the district court when USCIS has not decided the application for more than 120 days after the initial examination of the applicant. The district court "has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b). We conclude that only the district court has jurisdiction to determine a naturalization application when the applicant files a Section 1447(b) petition. Because USCIS did not have the power to adjudicate the application after Bustamante filed the Section 1447(b) action with the district court, this action is not moot.

REVERSED and REMANDED.

_____

PAUL O'DWYER, New York, NY, for Plaintiff-Appellant.

MARY KENNEY, for Amicus Curiae, American Immigration Law Foundation, in support of Plaintiff-Appellant.

DAVID BOBER, Assistant United States Attorney, (SARAH S. NORMAND, Assistant United States Attorney, on the brief), for PREET BHARARA, United States Attorney for the Southern District of New York, New York, NY, for Defendants-Appellees.

_____

POOLER, Circuit Judge:

Plaintiff-appellant Carlos Bustamante appeals from a judgment of the United States District Court for the Southern District of New York (McMahon, J.), granting defendants-appellees' motion to dismiss the complaint as moot. 8 U.S.C. § 1447(b) provides that a

naturalization applicant can bring a petition to the district court when United States Citizenship and Immigration Services ("USCIS") has not decided the application for more than 120 days after the initial examination of the applicant. The district court "has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b). In this case, the district court ruled that USCIS could still decide Bustamante's naturalization application after he filed a Section 1447(b) petition. Since USCIS denied Bustamante's application, the district court deemed this Section 1447(b) action moot.

The issue on this appeal is whether USCIS can still decide a naturalization application after an applicant files a Section 1447(b) petition in district court. We conclude that only the district court has jurisdiction to determine a naturalization application when, after USCIS has failed to adjudicate the application within 120 days of the initial examination, the applicant files a Section 1447(b) action. Although a properly filed Section 1447(b) petition removes USCIS's power to decide the naturalization application, USCIS still can recommend a disposition to the district court or request a remand for the agency to determine the application. It is incumbent upon the district court, however, to "determine the matter or remand the matter." 8 U.S.C. § 1447(b). Because USCIS did not have the power to adjudicate the application after Bustamante filed a Section 1447(b) action with the district court, this action is not moot. We therefore reverse and remand to the district court.

## BACKGROUND

Bustamante, a native of Mexico, has been a lawful permanent resident ("LPR") since 1972. In 2006, thirty-four years after becoming an LPR, Bustamante filed a naturalization

3

application on the grounds that he was an LPR residing in the United States for at least five years and showed good moral character during the five-year period preceding his application.[1]  On February 1, 2007, he was interviewed by a USCIS officer.

Section 1447(b) provides:

If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b).  On July 5, 2007, without a decision from USCIS more than 120 days after his initial interview, Bustamante filed a Section 1447(b) petition in the United States District Court for the Southern District of New York, seeking to have the court hold a hearing on his application and either grant the application or remand it to USCIS with an instruction to grant it.

On August 24, 2007, after Bustamante filed his Section 1447(b) petition, USCIS denied Bustamante's application based on his 1982 involuntary manslaughter conviction for his involvement in a fight that resulted in a person's death.  Though the conviction occurred outside the five-year statutory period and the record does not contain reference to other offenses, USCIS determined that Bustamante failed to show good moral character based on the conviction.[2]  In its

---

[1] To be eligible for naturalization, an applicant is required to meet the criteria of the Immigration and Nationality Act ("INA"), including the requirement that the applicant "has been and still is a person of good moral character" during the five-year period preceding the application and thereafter.  8 U.S.C. § 1427.

[2] The INA regulations provide that USCIS "is not limited to reviewing the applicant's conduct during the five years immediately preceding the filing of the application, but may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to that period, if the conduct of the applicant during the statutory period does not reflect that

4

denial, USCIS informed Bustamante that he could request a hearing on the decision within 30 days.  Bustamante did not seek a hearing.  Defendants then brought a motion to dismiss the Section 1447(b) petition as moot based on USCIS's denial of the application.  Bustamante countered that USCIS's denial of the naturalization application had no legal consequence because the filing of the Section 1447(b) petition divested USCIS of jurisdiction.

On January 29, 2008, the district court issued an order granting defendants' motion.  See Bustamante v. Chertoff, 533 F. Supp. 2d 373, 374 (S.D.N.Y. 2008).  On February 26, 2008, the district court entered an amended order granting the motion.  The district court held   that Section 1447(b) "does not divest CIS of jurisdiction over a pending naturalization application." Id. at 376.  The district court reasoned that "[t]he statutory language does not explicitly vest the district court with exclusive jurisdiction," id., and that a decision by USCIS does not divest a district court of jurisdiction because "nothing . . . can prevent an aggrieved applicant from going to the district court for final de novo review," id. at 377, a reference to the naturalization applicant's right to appeal an adverse USCIS decision once internally and then to a district court.  See 8 U.S.C. § 1421(c).  Based on its determination that USCIS had the authority to deny Bustamante's application after the Section 1447(b) petition was filed, the district court ruled that USCIS's denial mooted the Section 1447(b) petition.

Bustamante timely appealed.

---

there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character."  8 C.F.R. § 316.10(a)(2).

**DISCUSSION**

This case presents a question of first impression for our Court: Whether a properly filed Section 1447(b) petition divests USCIS of jurisdiction over a naturalization application? A divided panel of the Fourth Circuit and unanimous in banc panel of the Ninth Circuit have answered the question in the affirmative. Etape v. Chertoff, 497 F.3d 379 (4th Cir. 2007); United States v. Hovsepian, 359 F.3d 1144 (9th Cir. 2004) (in banc).[3] We agree that only the district court has jurisdiction over a naturalization application once an applicant files a proper Section 1447(b) petition. See Etape, 497 F.3d at 383-88; Hovsepian, 359 F.3d at 1159.

**I.      The Text of Section 1447(b)**

"[S]tatutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there." Puello v. BCIS, 511 F.3d 324, 327 (2d Cir. 2007) (quotation marks omitted). The language of Section 1447(b) expressly states that, when a naturalization applicant requests a hearing before the district court on a pending application that

---

[3] Without answering the question, the Tenth Circuit has expressed agreement with the reasoning of the Fourth and Ninth Circuits. See Al-Maleki v. Holder, 558 F.3d 1200, 1205 n.2 (10th Cir. 2009) (declining to answer the question of USCIS's jurisdiction to make a decision after a Section 1447(b) petition is filed, but noting that "[t]he persuasive reasoning of the Ninth and Fourth Circuits casts serious doubt" on the government's position that USCIS can still decide a naturalization application while a Section 1447(b) petition is pending before the district court).

Following oral argument, both parties submitted supplemental authority in support of their proposed approaches. USCIS cited to three district court decisions suggesting that the filing of a Section 1447(b) action does not vest exclusive jurisdiction in the district court. See Hassan v. Holder, __ F. Supp. 2d __, 2009 WL 2253017, at *2 (E.D.N.Y. July 28, 2009); Ali v. Henning, No. 08-2209, 2009 WL 1507685, at *1 (D. Minn. May 4, 2009); Bello-Camp v. Attorney General, No. 08-cv-885, 2009 WL 813146 (M.D. Fla Mar. 26, 2009). However, Bustamonte noted that a different court in the District of Minnesota came to the opposite conclusion, stating that by its plain terms, Section 1447(b) prevents USCIS from "mak[ing] an end run around the judicial process by issuing a denial after the lawsuit is filed." Lopez v. USCIS, No. 09-774, slip op. at 5 (D. Minn. Sept. 3, 2009).

6

USCIS has not decided for more than 120 days after the initial examination of the applicant, the court "has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b). This language clearly grants the district court jurisdiction over the naturalization application. See In re Am. Preferred Prescription, Inc., 255 F.3d 87, 94 (2d Cir. 2001) ("Subject-matter jurisdiction concerns a court's authority to make any ruling on the merits of an issue."). The issue as framed by the parties is whether the court's jurisdiction under Section 1447(b) is "exclusive."

The district court's jurisdiction under Section 1447(b) vests with a naturalization applicant's petition for a hearing in the absence of a timely decision by USCIS. USCIS has jurisdiction to adjudicate a naturalization application during the period up to 120 days after the initial examination of an applicant. USCIS also retains jurisdiction beyond the 120-day period following the initial examination as long as a naturalization applicant does not file a Section 1447(b) petition. See 8 U.S.C. § 1447(b). If USCIS does not render a decision for more than 120 days after the initial examination, Section 1447(b) provides for judicial intervention at the election of the naturalization applicant. The authority granted to the district court by Section 1447(b) – to "determine" the merits of the application or to "remand" the application to USCIS – establishes that a properly filed Section 1447(b) petition vests jurisdiction in the district court and divests USCIS of its jurisdiction to decide the application. See id. § 1447(b).

The government contends that USCIS retains authority to decide a naturalization application after a Section 1447(b) petition is filed. It would be illogical, however, for Congress to vest the district court with jurisdiction "to determine the matter" upon the filing of a Section 1447(b) petition, see 8 U.S.C. § 1447(b), but permit USCIS to have simultaneous authority to

7

decide the application, see Etape, 497 F.3d at 383 ("Nothing in the statute suggests that Congress intended that an agency could subvert Congress' choice to vest the district court with jurisdiction to 'determine the matter' once an applicant files a timely § 1447(b) petition." (quoting 8 U.S.C. § 1447(b)); Hovespian, 359 F.3d at 1160 ("How can the court 'determine the matter' if the INS has the option to 'determine the matter,' too, and essentially force the court to accept its view? If Congress had intended . . . the INS to retain power to make a naturalization decision even after the district court acquires jurisdiction, why would the statute expressly give the district court the option to decide the matter?").

Section 1447(b)'s reference to the district court's "remand" authority also demonstrates that the government's reading is flawed. By providing the district court with the option to "remand the matter, with appropriate instructions, to [USCIS]," 8 U.S.C. § 1447(b), Congress intended that, after an applicant files a proper Section 1447(b) petition, USCIS would lack the authority to decide an application absent a remand. To read the statute otherwise, as both Etape and Hovespian recognized, would render the "remand" language in the statute meaningless. See Etape, 497 F.3d at 384 ("[I]f we adopted the Government's view, a district court might not retain the power to issue any 'appropriate instructions' on remand—because the CIS could strip the court of jurisdiction before the remand order became final."); Hovespian, 359 F.3d at 1160 ("If the INS already had the power 'to determine the matter' in the meantime, th[e] phrase ['remand the matter, with appropriate instructions, to the Service to determine the matter'] would be surplusage.").

Giving effect to the plain meaning of the statute's terms, we cannot agree with the government's argument that USCIS retains authority to decide a naturalization application

8

because Section 1447(b) does not explicitly state that a district court's jurisdiction is "exclusive." When the 120-day period following the initial examination of an applicant has passed, Section 1447(b) contemplates something like a system of concurrent jurisdiction. Similar to a litigant who ordinarily can choose to bring a federal claim before either a federal or state court, see, e.g., Tafflin v. Levitt, 493 U.S. 455, 458-59 (1989), the naturalization applicant, who has an application pending before USCIS beyond the 120-day period, has the option pursuant to Section 1447(b) to continue with proceedings before USCIS or to bring the application before the district court. If the naturalization applicant chooses to do nothing, the application will remain pending before USCIS with the agency maintaining jurisdiction to decide the application. If the naturalization applicant chooses instead to file a Section 1447(b) petition with the district court, then the district court will have jurisdiction to decide the application or remand to USCIS.

This scenario bears some similarity to a system of concurrent jurisdiction because the body with authority to decide the application depends on the naturalization applicant's choice between staying the course with USCIS or effectively removing the application to the district court by filing a Section 1447(b) petition. See Black's Law Dictionary (8th ed. 2004) (defining "concurrent jurisdiction" as "jurisdiction that might be exercised simultaneously by more than one court over the same subject matter ... a litigant having the right to choose the court in which to file the action."). When the naturalization applicant chooses to file a Section 1447(b) petition, the district court acquires jurisdiction that is "exclusive" in the sense that USCIS is no longer empowered to decide the application. This is not much different from the concurrent jurisdiction that federal and state courts can have over a federal claim where only one court – typically the one where a litigant files the claim – will have authority to decide the claim. Cf. Tafflin, 493

9

U.S. at 458-59.  The language of Section 1447(b) shows that Congress intended either USCIS or

the district court to decide applications that remain pending beyond the 120-day period, at the

applicant's choice.  The omission of the term "exclusive" is consistent with this intent.[4]  But

nothing is the statute suggests that once the applicant makes a choice in favor of district court

adjudication, USCIS may independently rule dispositively on the question.

      In holding that the district court possesses exclusive jurisdiction to decide a naturalization

petition as to which a Section 1447(b) complaint has been filed, we do not suggest that upon the

applicant's invocation of a district court's Section 1447(b) jurisdiction, USCIS is barred from

continuing its consideration of the naturalization application or from reaching a tentative

---

[4]  The government also argues that the absence of explicit reference to "exclusive
jurisdiction" is significant because an earlier version of the statute contained such language.  See
INS v. Cardoza-Fonseca, 480 U.S. 421, 442-43 (1987) ("Few principles of statutory construction
are more compelling than the proposition that Congress does not intend sub silentio to enact
statutory language that it has earlier discarded in favor of other language." (quotation marks
omitted)).  The earlier version referred to by the government provided:

> Where there has been a failure to make a determination under [§ 1446] before the
> end of the 90-day period after the date on which the examination is conducted
> under such section, the United States district court for the district in which the
> applicant resides shall upon the demand of the petitioner exercise exclusive
> jurisdiction over the matter.

See H.R. Rep. No. 101-187, at 34 (1989).

It is reasonable to infer from this language that Congress was weighing a stronger version
of the statute than the one it ultimately enacted.  By providing that the district court "shall upon
the demand of the petitioner exercise exclusive jurisdiction over the matter," the earlier version
suggests that the district court would only have one option—to decide the naturalization
application.  Section 1447(b), as enacted, is different from this earlier version.  Congress used
more explicit language to indicate that the district court would have the options of deciding the
application or remanding to USCIS.  Congress enacted a statutory provision that gives USCIS
additional time to consider the application, and the possibility that the application will be
remanded for USCIS, rather than a court, to render a decision on the application in the first
instance.

10

determination. Certain practical realities might support such agency action. Section 1447(b) is triggered, after all, by agency delay. No one's interest are served by compelling further delay. Inevitably, the district court will solicit the parties' views on a Section 1447(b) petition before determining whether to reach the merits of the application or remand to the agency. The parties will likely stipulate to a remand if USCIS tentatively recommends that an application be granted. Even with applications that USCIS intends to deny and for which no stipulation would be expected, USCIS is entitled to request a remand. Thus, a system of district court/agency cooperation where, even upon the former's acquisition of jurisdiction, the latter continues its consideration of a matter, but requires court permission before it can put any decision into effect, may make sense. Such coordination is not unprecedented. Cf. Toliver v. County of Sullivan, 957 F.2d 47, 49 (2d Cir. 1992) (per curiam) (holding that "the district court may grant a rule 60(b) motion after an appeal is taken only if the moving party obtains permission from the circuit court," and that "this court must first give its consent so it can remand the case").

Section 1447(b) provides district courts with the flexibility to either decide or remand based on the particular circumstances of an application. While Section 1447(b) allows the district court to "remand, with appropriate instructions," for USCIS "to determine the matter," 8 U.S.C. § 1447(b), the district court is not required to instruct USCIS how to decide the matter. But, at the same time, district courts are required to exercise their jurisdiction when presented with a properly filed Section 1447(b) petition. See Tassy v. Brunswick Hosp. Ctr., Inc., 296 F.3d 65, 68 n.2 (2d Cir. 2002) ("[I]t will always be more economical, from a judge's point of view, to dismiss a case or quickly refer it to an administrative agency, instead of adjudicating it himself. We are enjoined to resist this temptation because of 'the virtually unflagging obligation of the

federal courts to exercise the jurisdiction given them.'" (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (citations omitted)). The statute envisions a system that conditions USCIS's authority to decide a naturalization application after the filing of a Section 1447(b) petition on the district court's determination that a remand is appropriate under the circumstances.

The foregoing analysis of Section 1447(b) comports with the Supreme Court's decision in Brock v. Pierce County, 476 U.S. 253 (1986). In Brock, the Court declined to find that an agency's failure to comply with a procedural deadline divested the agency of its power to act where the statute did not require it "to act within a particular time period and specif[y] a consequence for failure to comply with the provision." Id. at 259 (quotation marks and emphasis omitted); see also United States v. Boccanfuso, 882 F.2d 666, 671 (2d Cir. 1989) ("Federal agencies do not lose jurisdiction by their failure to comply with statutory time limits unless the statute demonstrates congressional intent that this result occur." (citing Brock, 476 U.S. at 266)). Because the now-repealed Comprehensive Employment and Training Act ("CETA") provided a deadline for the issuance of a final determination as to the misuse of CETA funds but did not specify a consequence for the Secretary of Labor's failure to do so in a timely fashion, the CETA "[did] not, standing alone, divest the Secretary of jurisdiction to act after that time." Id. at 266.

Unlike the statute considered in Brock, the language of Section 1447(b) demonstrates that Congress intended USCIS's failure to act on a naturalization application within 120 days of the initial interview to have a consequence—namely, that an applicant's petition to the district court beyond the 120-day period would divest USCIS of jurisdiction. See Etape, 497 F.3d at 384-85. The government asserts that Section 1447(b) cannot divest USCIS of jurisdiction because the

12

120-day deadline originated as part of the agency's own regulations. See 8 C.F.R. § 335.3(a) ("A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization. . . ."); see also Boccanfuso, 882 F.2d at 671 (finding that the Army Corps of Engineers could not "be estopped from enforcing the [Clean Water] Act on the ground that it failed to follow the deadlines established by its own regulations"). This argument fails to acknowledge that Congress explicitly incorporated the 120-day deadline into Section 1447(b) when it drafted the provision. Section 1447(b) provides for district court jurisdiction when USCIS fails to decide the application within "the 120-day period after the date on which the [initial] examination" occurred. 8 U.S.C. § 1447(b). Therefore, our analysis accords with Brock because Section 1447(b) "requires an agency . . . to act within a particular time period and specifies a consequence for failure to comply with the provision." Brock, 476 U.S. at 259 (quotation marks and emphasis omitted)

Accordingly, the plain language of the statute vests jurisdiction in the district court when a naturalization applicant files a proper Section 1447(b) petition. The government's view that USCIS retains jurisdiction to decide an application after the filing of a Section 1447(b) petition is inconsistent with the statutory language.

## II.     Statutory Context and Purpose

The statutory context and purpose also supports our interpretation of Section 1447(b). See Auburn Hous. Auth. v. Martinez, 277 F.3d 138, 144 (2d Cir. 2002) ("[T]he preferred meaning of a statutory provision is one that is consonant with the rest of the statute."). Before the Immigration Act of 1990 ("the Act"), Pub. L. No. 101-649, 104 Stat. 4978, the INS (now

13

USCIS) would investigate a naturalization applicant and provide the district court with a recommendation that the court was free to accept or reject in ruling on the application. See Kai Tung Chan v. Gantner, 464 F.3d 289, 290 (2d Cir. 2006) (per curiam). Because Congress sought to expedite the processing of naturalization applications that were subject to an extensive backlog, see, e.g., 135 Cong. Rec. H4539-02 (July 31, 1989) (statement of Rep. Morrison) (noting the "long backlogs" and the goal of "allow[ing] citizenship to be more expeditiously provided to those who qualify"), the Act provided USCIS with authority to decide naturalization applications in the first instance. See Kai Tung Chan, 464 F.3d at 290 (explaining that the Act "placed 'sole authority to naturalize persons as citizens of the United States [with] the Attorney General.'" (quoting 8 U.S.C. § 1421(a))). The Act ensures that naturalization applications granted by USCIS never come before the district court. Yet the Act secures an applicant's right to obtain judicial review by giving district courts jurisdiction over naturalization applications, upon the request of an applicant, when USCIS denies an application, see 8 U.S.C. § 1421(c), or fails to decide an application in a timely fashion, see 8 U.S.C. § 1447(b).

When USCIS denies an application, Section 1421 provides that the district court's review of the denial is de novo, and the court is required to make its own findings of fact and conclusions of law. 8 U.S.C. § 1421(c). Given that the district court has the authority to conduct de novo review of a USCIS denial and issue "the final word" on naturalization applications, see Etape, 497 F.3d at 386; Hovespian, 359 F.3d at 1162, it is reasonable to conclude, as have our sister circuits, that Congress intended for the district court to have sole authority to decide applications after a Section 1447(b) petition has been filed, and that USCIS cannot interfere with the court's jurisdiction by making a decision, unless, of course, the district court remands to the

14

agency, see Etape, 497 F.3d at 386; Hovespian, 359 F.3d at 1162-63.  The statutory scheme aims

to provide USCIS with an incentive to decide applications in a timely fashion or risk losing

jurisdiction to decide those applications in the first instance.  See Hovsepian, 359 F.3d at 1163.

With the 1990 Act, Congress sought a careful balance between the roles of USCIS and

the district courts in adjudicating naturalization applications.  USCIS is "charged with primary

naturalization responsibility."  Ajlani v. Chertoff, 545 F.3d 229, 241 (2d Cir. 2008).  The district

courts are required to exercise judicial review of naturalization applications that are denied or

that remain undecided beyond the requisite 120-day period.  Our interpretation is consistent with

Congress's intended purpose.

## CONCLUSION

For the foregoing reasons, we hold that USCIS did not have jurisdiction to decide

Bustamante's application after he filed a Section 1447(b) petition.  Accordingly, the judgment of

the district court is REVERSED and REMANDED.