**John Segun EDOBOR, Plaintiff,**

v.

**Paul ONYANGO, Director of the Atlanta District Office, USCIS; Alejandro Mayorkas, Director of U.S. Citizenship and Immigration Services; Robert S. Mueller, III, Director of Federal Bureau of Investigations; Michael A. Cannon, FBI Records Management Division; Janet Napolitano, Secretary, Department of Homeland Security; Eric H. Holder, Jr., U.S. Attorney General; and All Unknown Government Agencies Involved in Case/Security Checks, Defendants.**

Civil Action No. 1:12–CV–03632–AT.

United States District Court,
N.D. Georgia,
Atlanta Division.

May 10, 2013.

Leslie A. Diaz, Rajeshri Shah Patel; Siskind Susser P.C., for Plaintiffs.

Aileen Bell Hughes; Office of United States Attorney, Northern District of Georgia, for Defendant.

### ORDER

AMY TOTENBERG, District Judge.

This matter is before the Court on Defendant's Motion to Dismiss [Doc. 7]. For the following reasons, the Court **DENIES** the motion.

## I. BACKGROUND

Plaintiff John Segun Edobor is a citizen of Canada and Liberia and a lawful permanent resident of the United States. (Compl. ¶ 19.) On June 16, 2011, Plaintiff filed a Form N–400 Application for Naturalization with the United States Citizenship and Immigration Services (hereinafter "USCIS"). (*Id.*) On October 12, 2011, Plaintiff completed his application interview/examination and successfully passed his English and U.S. history tests. (*Id.*)

The USCIS took no action on Plaintiff's application for more than one year. (*Id.* ¶ 20.) Plaintiff made numerous inquiries with USCIS and was advised that his case required additional review. (*Id.* ¶ 21.) Plaintiff alleges he complied with all of Defendants' requirements necessary for adjudication of his N–400 application. (*Id.* ¶ 25.)

On October 18, 2012, Plaintiff filed a Complaint seeking judicial determination of his naturalization application and a declaration that Plaintiff is eligible for naturalization. Alternatively, Plaintiff requests mandamus, injunctive, and declaratory relief in the form of an order compelling Defendants to complete his background check and adjudicate Plaintiff's application.

On February 20, 2013, while this action was pending, USCIS denied Plaintiff's application to become a U.S. citizen.

## II. DISCUSSION

Defendants argue that Plaintiff's Complaint should be dismissed as moot following USCIS' denial of his naturalization application. Plaintiff argues in response that his Complaint is not moot because (1) this Court is vested with exclusive jurisdiction to adjudicate his application pursuant to 8 U.S.C. § 1447(b) after USCIS failed to make a decision within 120 days of his

interview/examination; and (2) USCIS' subsequent denial of Plaintiff's application while this action was pending was a nullity.

■■■■ Congress charged USCIS with the primary responsibility of processing applications for naturalization. *See* 8 U.S.C. § 1446; 8 C.F.R. §§ 334.2, 335.2, 335.3; *Walji v. Gonzales,* 500 F.3d 432, 433–34 (5th Cir.2007) (describing the statutory process for submitting and processing naturalization applicants); *Martinez v. Secretary, Dept. of Homeland Sec.,* 670 F.Supp.2d 1325, 1327 (M.D.Fla.2009). However, Congress enacted 8 U.S.C. § 1447(b) to provide applicants with a mechanism to seek judicial review of a delayed naturalization application. *See Walji,* 500 F.3d at 438 (noting that "[a] central purpose of the statute was to reduce the waiting time for naturalization applicants"); *United States v. Hovsepian,* 359 F.3d 1144, 1159–1164 (9th Cir.2004) (stating that "Congress intended to streamline the process of applying for naturalization" when it enacted § 1447(b)); *Martinez,* 670 F.Supp.2d at 1327. Accordingly, the statute provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120–day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. ***Such court has jurisdiction over the matter and may either determine the matter or remand the matter,*** with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b) (emphasis added).

Although the Eleventh Circuit has not decided the question, every Circuit Court to address the scope of jurisdiction under Section 1447(b) has held that a district court acquires exclusive jurisdiction to determine a naturalization application once a complaint is filed pursuant to the statute after USCIS fails to adjudicate the application within 120 days of the initial examination. *See Bustamante v. Napolitano,* 582 F.3d 403, 406 (2nd Cir.2009) (holding that "a properly filed Section 1447(b) petition vests jurisdiction in the district court and divests USCIC of its jurisdiction to decide the application"); *Etape v. Chertoff,* 497 F.3d 379, 383–384 (4th Cir.2007) (giving Section 1447(b)'s words their ordinary meaning and concluding that a proper § 1447(b) petition vests the district court with exclusive jurisdiction over a naturalization application, unless and until the court remands the matter to the USCIS); *United States v. Hovsepian,* 359 F.3d 1144, 1159–1164 (9th Cir.2004) (holding that district court had exclusive rather than concurrent jurisdiction over naturalization application "[b]ased on the text of § 1447(b), the context of related statutory provisions, and Congress' policy objectives"); *see also Walji v. Gonzales,* 500 F.3d 432 (5th Cir. 2007) (noting the weight of authority that § 1447(b) deprives the USCIS of jurisdiction over an application pending without action for more than 120 days after the initial interview upon an applicant's filing suit in the district court).

Additionally, several district courts in this Circuit have followed suit and held that the filing of a complaint pursuant to Section 1447(b) vests the court with exclusive jurisdiction over a plaintiff's naturalization application that cannot be rendered moot by a subsequent denial of the application by USCIS during the pendency of the litigation. *Martinez v. Secretary, Dept. of Homeland Sec.,* 670 F.Supp.2d 1325 (M.D.Fla.2009) (interpreting language of § 1447(b) as compelling the conclusion that "once a district court acquires jurisdiction, that jurisdiction is exclusive"); *Al-Atiyeh v. Swacina,* 650 F.Supp.2d 1244

(N.D.Fla.2009) (finding that § 1447(b) confers exclusive jurisdiction on the district court based on precedent from Fourth and Ninth Circuits and because of the plain language of the statute); *Izraileva v. Chertoff,* 629 F.Supp.2d 1286 (M.D.Fla. 2007) (following reasoning of *Hovsepian and Etape* and concluding that "the plain language of § 1447(b) and its legislative history confirms Congressional intent to strip CIS of jurisdiction if it does not adjudicate a naturalization application within 120 days of the applicant's examination"); *Avidan v. Gonzales,* No. 1:06–cv–1121–TCB, 2007 WL 1290458 (N.D.Ga. Mar. 19, 2007); *Kalla v. Chertoff,* No. 1:06–cv1732–MHS, 2007 WL 415157, *2 (N.D.Ga. Feb. 6, 2007); *c.f. Bello–Camp v. Attorney General, U.S.,* 2009 WL 813146, *5 (M.D.Fla. Mar. 26, 2009) (holding that § 1447(b) confers concurrent jurisdiction upon the district court and USCIS).

Despite the overwhelming weight of authority supporting Plaintiff's position, Defendants assert in their Reply that the Court (1) no longer retains jurisdiction pursuant to Section 1447(b) once USCIS adjudicated Plaintiff's naturalization application and (2) lacks jurisdiction to adjudicate the application because Plaintiff failed to exhaust his administrative remedies pursuant to 8 U.S.C. § 1421(c). Curiously, Defendants do not attempt to distinguish any of the cases holding that Plaintiff's filing of a § 1447(b) petition deprives USCIS of authority to act on his pending naturalization application and confers exclusive jurisdiction over the matter to this Court. Rather, Defendants rely, in part, on *Sze v. INS,* 153 F.3d 1005 (9th Cir. 1998), a 1998 opinion of the Ninth Circuit

that was expressly distinguished and effectively overruled by the Ninth Circuit's 2004 opinion in *Hovsepian.*[1] *See Zaranska v. U.S. Dep't of Homeland Sec.,* 400 F.Supp.2d 500, 508 (E.D.N.Y.2005) (noting that *Sze* was overruled by *Hovsepian* ); *Hovsepian,* 359 F.3d at 1161 (distinguishing *Sze* on the grounds that the *Sze* plaintiffs brought a test case urging the court to issue a writ of mandamus to the INS to act on stalled naturalization applications, and never asked the court to decide the application itself). In *Sze,* the Ninth Circuit dismissed an appeal for lack of jurisdiction as a result of INS having granted the petitioners' naturalization applications during the litigation. Indeed, since its decision in *Sze,* the Ninth Circuit has held that the filing of a complaint under Section 1447(b) deprives USCIS of its authority to adjudicate pending naturalization applications. *Hovsepian,* 359 F.3d at 1161 (distinguishing *Sze* and stating "because the requested relief was INS action and the INS had acted definitively in the plaintiff's favor by the time the case reached us [—] the applicants had become citizens [—] mootness was the only possible conclusion we could draw ... *Sze* did not make any substantive holding concerning the naturalization procedures that we expressly did not consider).

Citing *Sze,* Defendants describe naturalization as a four-stage process that includes: (1) the submission of an application to INS; (2) an INS/FBI background investigation; (3)(a) applicant interview by INS naturalization examiner; (3)(b) INS adjudication of application; and (4) the naturalization ceremony and administra-

---

1. Defendants also rely on two other cases that have been overruled. *See Hassan v. Holder,* 638 F.Supp.2d 329 (E.D.N.Y.2009), *overruled by Bustamante v. Napolitano,* 582 F.3d 403, 406 (2nd Cir.2009); *Kia v. U.S. Immigration & Naturalization Service,* 175 F.3d 1014, 1999

WL 172818 (4th Cir.1999), *overruled by Etape v. Chertoff,* 497 F.3d 379, 383–384 (4th Cir. 2007). Defendants' failure to acknowledge the subsequent negative treatment and history of these cases is troubling.

tion of the oath of citizenship. (*See* Reply at 2–4 (citing *Sze*, 153 F.3d at 1007–1008).) According to Defendants, enmeshed somewhere between the third and fourth stages is Section 1447(b)'s procedure for applicants to request a hearing before a district court on a stalled naturalization application. Defendant summarizes this process as follows:

> At the third step of the process, the applicant is interviewed by an INS naturalization examiner. *Sze*, 153 F.3d at 1008; 8 U.S.C. § 1446(b); 8 C.F.R. § 335.2. Following the applicant's interview, *the INS naturalization examiner either grants or denies the application to conclude the third step of the process. See Sze*, 153 F.3d at 1008. To ensure that an applicant will receive a prompt decision on the application, the INA provides that, in the event the INS fails to render a decision within 120 days of the "date on which the examination is conducted," the applicant may apply for hearing on the application in a district court. *See Sze*, 153 F.3d at 1008; 8 U.S.C. § 1447(b) [quoting text of 8 U.S.C. § 1447(b) ] If the INS grants the application, the applicant proceeds to the fourth and final step, i.e., scheduling a ceremony to administer the oath of citizenship. *See Sze*, 153 F.3d at 1008; 8 U.S.C. §§ 1421, 1448; 8 C.F.R. § 310.3, 337. *If INS denies the application, the applicant's only option is to seek review of the denial by requesting a hearing before an immigration officer. See Sze*, 153 F.3d at 1008; 8 U.S.C. § 1447(a).

(Reply at 2–3) (emphasis added). Contrary to Defendants' position here, the Ninth Circuit in *Sze* expressly acknowledged that "in the event that the INS fails to render a decision in 120 days, the applicant may request an individual hearing in the appropriate United States District Court [and] [t]hat court may either determine the matter itself, or remand the case to the INS with instructions." *Sze*, 153 F.3d at 1008 (citing 8 U.S.C. § 1447(b); 8 C.F.R. § 310.5).

Notably absent from Defendant's briefing is any discussion of the precise circumstances of this case—what happens when USCIS denies a naturalization application after the plaintiff has already petitioned the district court for a hearing pursuant to Section 1447(b)? Instead, Defendants skirt the issue and baldly assert that the court's jurisdiction exists only in two situations: (1) when more than 120 days have elapsed following the application by INS and there has been no decision on the application by INS, or (2) where the INS has denied the application and the applicant has received a hearing before an immigration officer to review the denial.[2] Al-

---

2. Defendants further assert that "to the extent Plaintiff may seek to invoke the jurisdiction of this Court by seeking leave to amend his complaint to obtain a determination on his applications after 120 days elapsed following his examinations by CIS without the issuance of a decision on his application, his case is factually similar to *Chavez*" and he is required to exhaust his administrative appeals before seeking judicial review of INS's denial. (Reply at 6–7.) Defendants' argument fails for two reasons. First, the facts of *Chavez v. INS*, 844 F.Supp. 1224 (N.D.Ill.1993) could not be more different from the facts of this case. In *Chavez*, the plaintiff filed a complaint in the district court pursuant to Section 1447(b) after his application for naturalization had been pending with the INS for nearly a year, requesting that the court grant his application. *Id.* at 1224. The district court remanded the application to the INS with instructions to adjudicate the matter within sixty days. *Id.* INS denied the application and instituted deportation proceedings. *Id.* The plaintiff then sought to reinstate his complaint in the district court and challenged the merits of INS' denial of his application. *Id.* The court denied the plaintiff's motion to reinstate his claim, finding that Section 1447(b) was not intended to permit a district court to

though Defendants contend that "several courts have followed the above analysis," the cases cited have either been overruled or actually support Plaintiff's position that the court retains jurisdiction over the application under the circumstances of this case.[3]

The statute provides that once an applicant files a petition for review under Section 1447(b), the district court "has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter." 8 U.S.C. § 1447(b). Defendants' view that USCIS retains authority to decide a naturalization application after a § 1447(b) petition is filed and the subsequent denial of the application renders moot Plaintiff's Complaint is not supported by the text of the statute and has been systematically rejected by the majority of the courts. Section 1447(b) "plainly provides that the district court 'has jurisdiction over the matter' and may, if it chooses, relinquish jurisdiction to USCIS." *Martinez*, 670 F.Supp.2d at 1328. "It would be illogical ... for Congress to vest the district court with jurisdiction 'to determine the matter' upon the filing of a Section 1447(b) petition ... but permit USCIS to have simultaneous authority to decide the application." *Busta-*

*mante*, 582 F.3d at 406. The Circuit Courts are in agreement that

> By providing the district court with the option to 'remand the matter, with appropriate instructions, to USCIS, Congress intended that after an applicant files a proper Section 1447(b) petition, USCIS would lack the authority to decide an application absent a remand. To read the statute otherwise ... would render the 'remand' language in the statute meaningless.

*Bustamante*, 582 F.3d at 406–407 (citations omitted); *Etape*, 497 F.3d at 383 ("Nothing in the statute suggests that Congress intended that an agency could subvert Congress' choice to vest the district court with jurisdiction to 'determine the matter' once an applicant files a timely § 1447(b) petition.") (*quoting* 8 U.S.C. § 1447(b)); *Hovsepian*, 359 F.3d at 1160 ("How can the court 'determine the matter' if the INS has the option to 'determine the matter,' too, and essentially force the court to accept its view? If Congress had intended ... the INS to retain power to make a naturalization decision even after the district court acquires jurisdiction, why would the statute expressly give the district court the option to decide the matter?").

█ The majority view and prevailing wisdom is that the Court's jurisdiction under Section 1447(b) is exclusive, and

---

circumvent the appeals process in Section 1447(a) that provides that if "an application for naturalization is denied, the applicant may request a hearing before an immigration officer." *Id.* Here, USCIS denied Plaintiff's application only after Plaintiff filed his Section 1447(b) Complaint and without any instructions to do so from this Court pursuant to that statute. Second, contrary to Defendants' interpretation, Plaintiff expressly pled in Paragraph 6 of his Complaint that:

> Because more than 120 days have passed since Plaintiff's interview or examination on his naturalization application, this Complaint is being filed so that this honorable

Court shall retain exclusive jurisdiction in Plaintiff's naturalization application and decide the matter pursuant to INA Section 336(b), 8 U.S.C. § 1447(b).

(Compl. ¶ 6.)

3. The single exception is the unreported district court decision in *Farah v. Gonzales*, 2006 WL 1116526, at *2 (D.Minn. April 26, 2006), which has not been expressly overruled as the Eighth Circuit has not addressed the issue. Three district courts in this Circuit have either declined to follow *Farah* or found it be distinguishable. *See Martinez*, 670 F.Supp.2d at 1327; *Izraileva*, 629 F.Supp.2d at 1292; *Kalla*, 2007 WL 415157, at *2.

USCIS is divested of its authority to subsequently determine a naturalization application unless the Court exercises its statutorily granted authority to "remand the matter" to USCIS. "Consequently, any adjudication by the [USCIS] made after the Complaint was filed was without statutory or other legal authority and could not have constituted final adjudication divesting [the] Court of its exclusive jurisdiction over the matter." *Izraileva v. Chertoff*, 629 F.Supp.2d 1286, 1293 (M.D.Fla.2007). Defendant's Motion to Dismiss [Doc. 7] is therefore **DENIED.**

■ Not surprisingly, in a last ditch effort, Defendants request in their Reply that the Court remand this matter to USCIS for a determination of Plaintiff's application for naturalization. Plaintiff opposes remand, arguing that the Court should exercise its jurisdiction to conduct a *de novo* hearing to decide the matter. The Court finds that remand at this stage would be an exercise in futility after USCIS has already attempted to deny Plaintiff's application. Accordingly, the Court declines to remand Plaintiff's application to USCIS for a determination of whether to grant or deny citizenship.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [Doc. 7] is **DENIED.** The parties are **DIRECTED** to contact the Courtroom Deputy Clerk within **SEVEN (7) DAYS** of this Order to schedule a telephone conference with the Court to discuss how the case should proceed.