# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-3133

_____

Emad Haroun

*Plaintiff - Appellant*

v.

U.S. Department of Homeland Security; U.S. Citizenship and Immigration
Services; Kevin McAleenan; Kenneth T. Cuccinelli; Ann Marie Jordan-Starks[1]

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Eastern Division

_____

Submitted: December 13, 2018
Filed: July 15, 2019

_____

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

_____

[1]Kevin McAleenan, Kenneth T. Cuccinelli, and Ann Marie Jordan-Starks have been appointed to serve as the Acting Secretary of Homeland Security, Acting Director of the United States Citizenship and Immigration Services ("USCIS"), and Acting Director of the St. Louis USCIS Field Office, respectively, and are automatically substituted as appellees pursuant to Federal Rule of Appellate Procedure 43(c)(2).

Those seeking to become United States citizens must submit an application and complete an examination with the United States Citizenship and Immigration Services ("USCIS"). If the USCIS fails to reach a decision on the application within 120 days after the applicant completes this process, 8 U.S.C. § 1447(b) allows the applicant to seek a decision from the district court in the district in which the applicant resides. Once the applicant does so, the statute provides that the district court "has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the [USCIS] to determine the matter." *Id.* The question we face is whether a proceeding in the district court under § 1447(b) becomes moot when the USCIS purports to deny a naturalization application *after* the applicant has already initiated the court proceeding. We conclude it does not.

## I. Background

Emad Haroun is a citizen of Jordan and a lawful United States permanent resident who lives in St. Louis, Missouri. In September 2014, he filed the application for naturalization at issue in this case. Haroun completed all of the required examinations by early 2015. In September 2016, when the USCIS had still not made a decision on his application, he sued the U.S. Department of Homeland Security, the USCIS, and numerous government officials ("the Government").[2] He asked the district court to grant his naturalization application or order the USCIS to timely make a decision on it.

The Government moved to dismiss. The USCIS had issued a decision denying Haroun's application for lack of good moral character five days after he filed in the district court, which the Government argued made the case moot. The district court granted the motion. It concluded that § 1447(b) creates "concurrent jurisdiction"

---

[2]Haroun also challenged the legality of a USCIS program that he alleged was responsible for the delay of his application. That issue is not before us in this appeal.

between district courts and the USCIS over naturalization applications and that the denial mooted the district court proceeding. Haroun timely appealed.

## II. Analysis

Reviewing the district court's order de novo, *Davis v. Morris-Walker, LTD*, 922 F.3d 868, 870 (8th Cir. 2019), we agree with Haroun that the court erred in dismissing his proceeding under § 1447(b). Our conclusion on the issue of statutory interpretation presented here is in agreement with each of our sister circuits that have addressed this question. *See Aljabri v. Holder*, 745 F.3d 816 (7th Cir. 2014); *Bustamante v. Napolitano*, 582 F.3d 403 (2d Cir. 2009); *Etape v. Chertoff*, 497 F.3d 379 (4th Cir. 2007); *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004) (en banc).

Prior to the Immigration Act of 1990 ("the 1990 Act"), Pub. L. No. 101-649, 104 Stat. 4978, exclusive jurisdiction over naturalization proceedings rested with federal district courts. 8 U.S.C. § 1421(a) (1990); *see also Bustamante*, 582 F.3d at 409–10. The Immigration and Naturalization Service — the predecessor to the USCIS — would conduct the investigations into naturalization applicants and provide a recommendation to the district court on whether to grant the application. *Bustamante*, 582 F.3d at 409–10.

The 1990 Act changed that process. To alleviate the backlog of naturalization applications, Congress handed jurisdiction over naturalization applications to the Attorney General, who would in turn designate employees of the USCIS to process the applications. *See* 8 U.S.C. § 1421(a); *Bustamante*, 582 F.3d at 410; *Hovsepian*, 359 F.3d at 1163; *see also* 8 U.S.C. § 1446. But the 1990 Act did not cut district courts out of the process. In fact, courts retained a critical role: Applicants who have been denied by the USCIS may seek review in the district court, which reviews the denial de novo and may even receive new evidence at the applicant's request.

§ 1421(c). The district court may also decide a naturalization application if the USCIS fails to reach a timely decision on it. After 120 days from the time an application is submitted and the naturalization examination is complete:

> . . . the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the [USCIS] to determine the matter.

§ 1447(b).

The Government's primary textual argument in favor of mootness can be summarized as: (1) the USCIS (through the Attorney General) has "[t]he sole authority to naturalize persons as citizens of the United States," § 1421(a), and (2) the grant of jurisdiction in § 1447(b) to district courts over naturalization applications does not explicitly state that such authority is exclusive of the USCIS's authority, therefore (3) both the district court and the USCIS have authority to decide the application and "whichever entity adjudicates the application first — be it USCIS or the court — renders the final adjudication, unless the court chooses to remand first." Looking to the text and context of the statute, we reject this argument and conclude the USCIS's purported denial of Haroun's naturalization application after he initiated a district court proceeding under § 1447(b) did not render the case moot.

First and foremost, the statute's grant of authority to the district court to remand the matter to the USCIS undermines the Government's reading of § 1447(b). As other courts have recognized, "it would render meaningless the district court's power to 'remand the matter' if the agency could act even without a remand." *Aljabri*, 745 F.3d at 820; *see also Bustamante*, 582 F.3d at 406–07; *Hovsepian*, 359 F.3d at 1160. "When interpreting a statute, courts typically do not presume that Congress has used superfluous words in its enactments." *Union Pac. R.R. Co. v.*

*United States*, 865 F.3d 1045, 1050 (8th Cir. 2017).  Moreover, interpreting the statute to allow the USCIS to rule on an application while the district court "has jurisdiction" to "determine the matter" would undermine the district court's ability to remand with directions as the statute authorizes.  *See Etape*, 497 F.3d at 384.

Second, the structure of the statutory scheme for deciding naturalization applications supports our conclusion.  Naturalization applications are decided by the USCIS, but denials are subject to de novo review by district courts — "the district court has the final word and does not defer to any of the [USCIS's] findings or conclusions."  *Hovsepian*, 359 F.3d at 1162 (emphasis omitted) (discussing § 1421(c)).  A proceeding under "§ 1447(b) is best viewed as a mechanism by which naturalization applicants who are impatient with [USCIS] delay may skip the agency's analysis of their application and proceed directly to the step in which the district court conducts a de novo review of the application."  *Id.*  Under the Government's reading, the USCIS could wrest the decision away from the district court, only for the applicant (if denied) to return right to the district court for it to conduct the same de novo review.  That interpretation makes little sense.

The district court's remand authority also fits well into this view of the statutory scheme.  As the Fourth Circuit pointed out, "[t]he very word 'remand' indicates that Congress intended a hierarchy."  *Etape*, 497 F.3d at 383.  In this hierarchy, the district court reviews de novo the USCIS's denials of naturalization applications.  § 1421(c).  A remand generally involves a higher tribunal in a decision-making hierarchy sending a matter back for a lower tribunal to decide.  But under the Government's reading of § 1447(b), there is no hierarchy — the USCIS and the district court are decision makers on equal footing, acting in parallel.  To the contrary, we hold that once a district court obtains jurisdiction to decide a naturalization application under § 1447(b), the USCIS regains authority to grant or deny the application only if the district court remands the matter back down to it.  The USCIS's purported denial here was *void ab initio*.

Third, the Government's argument for concurrent jurisdiction is not a natural reading of the statutory language providing the district court "has jurisdiction over the matter." § 1447(b). Concurrent jurisdiction generally means only that the plaintiff has the choice of commencing the action in either of two courts having jurisdiction. *See Jurisdiction*, Black's Law Dictionary (10th ed. 2014) (defining "concurrent jurisdiction" as "[j]urisdiction that *might be exercised* simultaneously by more than one court over the same subject matter and within the same territory, *a litigant having the right to choose the court in which to file the action*" (emphasis added)). Concurrent jurisdiction in *that* sense does exist between the end of the 120 day period and the commencement of a § 1447(b) proceeding: The naturalization applicant may choose to wait for a decision from the USCIS or seek a decision from the district court, which then "has jurisdiction over the matter." § 1447(b). But the Government's theory of overlapping jurisdiction *after* the commencement of a § 1447(b) proceeding is a strained reading of the statute.

Fourth, the Government's focus on the word "may" is unpersuasive. Section 1447(b) provides that a district court "may either determine the matter or remand the matter." The Government argues the word "may" in the statute renders the court's exercise of jurisdiction optional and allows room for the USCIS to act. It is true the word "may" generally carries a permissive and discretionary meaning. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 112–15 (2012); *May*, Webster's Third New International Dictionary (2002). But the Government overlooks that the word "may" is followed by the word "either." § 1447(b). The statute gives the district court discretion to *either* determine or remand the matter. *Id.* The district court may do either, but it must do one of them; deciding the application or remanding to the USCIS are the only two options.

Finally, we find the Government's resort to legislative history unpersuasive. The Government argues its reading of § 1447(b) is supported by the fact that an

earlier version of the House of Representatives' bill that led to the 1990 Act would have provided for district courts to have "exclusive jurisdiction," whereas the final version simply said that a district court "has jurisdiction over the matter." We decline the Government's invitation to interpret § 1447(b) based on what it claims is the legislative intent behind the statute rather than what the text of the statute says. After all, "a law means what its text most appropriately conveys, whatever the Congress that enacted it might have 'intended.'" *Bank One Chicago, N.A. v. Midwest Bank & Tr. Co.*, 516 U.S. 264, 279 (1996) (Scalia, J., concurring in part). And even if subjective intent (rather than the statutory text) were the locus of statutory meaning, the drafting history in the House of Representatives cannot be presumed to reliably represent the intent of Senators and the President, who also play critical and indispensable roles in the constitutionally prescribed process for lawmaking. *See* U.S. Const. Art. I, § 7; *see also* Scalia & Garner, *supra*, at 376.

Under § 1447(b), the district court "has jurisdiction over the matter" of Haroun's naturalization application, notwithstanding the USCIS's purported denial of his application. The district court "may either determine the matter or remand the matter, with appropriate instructions, to the [USCIS] to determine the matter." *Id.* The case is not moot because it is not "impossible for [the] court to grant any effectual relief whatever to" Haroun. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (quoting *Knox v. Serv. Empls. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). The relief he sought included granting his naturalization application, something the district court is still able to do. We express no opinion on whether the district court should grant the application, deny the application, or remand the matter to the USCIS.

## III. Conclusion

For the reasons set forth herein, we reverse and remand for further proceedings.

———————————————